BOOKER v. BOOKER. (No. 2021.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 22, 1918. Rehearing Denied Nov. 28, 1918.)

1. EVIDENCE ☞594 — UNCONTROVERTED EVIDENCE.

The jury were not bound to believe the testimony of two witnesses, although not directly controverted.

2. HUSBAND AND WIFE ☞248½—COMMUNITY PROPERTY.

Where a woman rented land before she married and at the time of the marriage owned the crops growing thereon in her own separate right, the property did not become community property, the expense of growing the crop being paid out of the crop, except that the husband worked a few hours on it.

Appeal from District Court, Fannin County; Ben H. Denton, Judge.

Suit by H. F. Booker against A. G. Booker, who filed a cross-action. Judgment for plaintiff, and defendant appeals. Affirmed.

The suit was commenced by appellee. It was for a divorce from appellant on the ground of cruel treatment. In a cross-action appellant sought a divorce from appellee on the same ground. It appeared that when the parties married July 3, 1917, appellant was a widower about 62 years of age, and that appellee was a widow about 58 years of age. They separated August 16, 1917, and never afterwards lived together.

In her petition appellee alleged that she owned in her separate right crops of cotton and corn and two horses, of the aggregate value of $1,000, which appellant was threatening to dispose of. She prayed that he be restrained from interfering with her in the management, etc., of said property. In his cross-petition appellant alleged that he owned said crops and horses by purchase thereof of appellee's son, Lankford Price.

It appeared from testimony that the crops in controversy were grown on land appellee rented of one Martin for the year 1917, and that the horses were purchased by her and her son Sherman, a boy about 17 years old, of said Martin on a credit, they executing to Martin a mortgage on the horses to secure the purchase price. It seems that Sherman prepared the land for cultivation, planted some of the crops grown on it, and then en-

listed for service in the navy of the United States. Lankford, another son of appellee, then took charge of the farming operations, and continued same until some time in July, when he enlisted for service in the army of the United States. Appellee testified that each of her said sons, when they, respectively, ceased to work on the land, turned over any interest he had in the crops and horses to her; that she took charge of same, and out of the proceeds thereof paid indebtedness she, Sherman, and Lankford had incurred. Appellant testified that Lankford turned over the property in controversy to him when he (Lankford) enlisted as stated, in consideration of his (appellant's) undertaking to pay the debts he (Lankford) owed. There was no testimony showing how Lankford acquired a right to dispose of the property.

The jury found on issues submitted to them: (1) That appellant had been guilty of cruel treatment of appellee, in ways alleged by her, "of such a nature as to render their living together insupportable"; and (2) that appellee's son Lankford did not sell the property in controversy to appellant; and (3) that a writ of injunction, issued at appellee's instance, was not wrongfully sued out. The court thereupon rendered judgment, refusing appellant relief he prayed for, and granting appellee relief she prayed for, to wit, a divorce, and perpetuating an injunction he had before granted, restraining appellant from molesting and interfering with appellee in the management of her property. Appellant was dissatisfied with the judgment, and prosecuted this appeal.

J. W. Gross and H. W. Hunt, both of Bonham, for appellant.

Cunningham & McMahon, of Bonham, for appellee.

WILLSON, C. J. (after stating the facts as above). The judgment is attacked on two grounds:

First, it is insisted that it was without the support of evidence in so far as it determined that appellee was entitled to a divorce. Careful consideration of the record has caused us to resolve a doubt we had as to whether this contention was meritorious or not in favor of the judgment in that respect. Therefore the assignments which present the question are overruled.

[1, 2] Second, it is insisted that the judgment was wrong in so far as it denied appellant a recovery of the property, or a part of it, in controversy. It is urged that it appeared from uncontroverted testimony that appellee's son Lankford sold the property to appellant. It may be conceded that the testimony of appellant and his son that Lankford turned the crops over to the former was not directly converted. But the jury were

not bound to believe the testimony; and, moreover, there was no testimony showing that Lankford owned the crops, or any interest in same, or in any way had acquired a right to turn them over to appellant. Next, it is urged that if appellant through Lankford did not own all the crops, they belonged to the community estate between him and appellee, and therefore that he should have been awarded one-half the value of same. The contention is overruled. We think it sufficiently appeared from the testimony that appellee rented the land long before the time when she married appellant, and at the time she married him owned the crops growing thereon in her own separate right. It further sufficiently appeared that, except for a few hours' labor bestowed thereon by appellant, the value of which was not shown, the expense incurred in cultivating, gathering, and marketing the crops after appellee's son Lankford enlisted in the army was paid out of the proceeds of a sale thereof, and that no part of such expense was paid for with funds belonging to the community estate between appellant and appellee.

The judgment is affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes